UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SANDRA BOUCHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. 1:10-cv-01125-SEB-MJD |
| MICHAEL ASTRUE Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY**

Sandra Boucher seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). *See* 42 U.S.C. §§ 416(i); 423(d). For the reasons detailed below, the judgment is AFIRMED.

**Applicable Standard**

To be eligible for DIB, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and

laboratory findings, not only by a claimant's statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. §§ 404.1520 and 416.924. If disability status can be determined at any step in the sequence, an application will not be reviewed further. Id. At the first step, if the claimant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the claimant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.924(c). Third, if the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the Administration has pre-determined are disabling. 20 C.F.R. § 404.1525. If the claimant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. §§ 404.1545 and 416.945. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. Fifth, considering the claimant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work in the relevant economy. The claimant bears the burden of proof at steps one through four, and at step five the burdens shifts to the Commissioner. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The task a court faces in a case such as this is not to attempt a de novo determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision is supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

Ms. Boucher applied for DIB on January 19, 2005, alleging that she was disabled since November 20, 2004. Her application was denied initially and on reconsideration. On November 16, 2007, a hearing was held before the Administrative Law Judge ("ALJ"), at which Ms. Boucher, a medical expert, and a vocational expert testified, after which the ALJ denied the application. The Appeals Council subsequently denied Ms. Boucher's request for review, making the ALJ's opinion the final decision of the Commissioner.

At step one of the sequential evaluation process, the ALJ found that Ms. Boucher had not engaged in substantial gainful activity since November 20, 2004, the alleged onset date. At step two, the ALJ found that Ms. Boucher suffers from the severe impairments of degenerative disc disease of the lumbar spine, diabetes mellitus, and obesity. At step three, the ALJ found that Ms. Boucher does not have an impairment or combination of impairments that either meet or medically equal any of the conditions in the Listing of Impairments.

The ALJ found that Ms. Boucher has the RFC to perform a range of "sedentary" work, with the following restrictions: lift no more than 10 pounds at a time; occasionally lift and carry articles like docket files, ledgers, and small tools; sit 6 hours during an 8-hour workday; and

stand and/or walk at least 2 hours during an 8-hour workday.  The ALJ also found that Ms. Boucher must be able to alternate into a sitting and standing position at will for 5 minutes per hour without leaving the work station.  Finally, the ALJ limited Ms. Boucher to occasional bending, kneeling, stooping, and crawling, and no squatting, climbing ladders, ropes, scaffolds, ramps, and stairs.  At step four, the ALJ found that Ms. Boucher is unable to perform her past relevant work as a senior press operator.  At step five, the ALJ found that, considering Ms. Boucher's RFC, age (46 at the hearing date), education (high school equivalency diploma), and transferability of skills (determined to be immaterial), and relying on the Medical-Vocational Guidelines and on the testimony of the vocational expert, over 4,000 jobs exist in the regional economy that Ms. Boucher can perform.  These occupations include: information clerk, auditing clerk, and general office clerk. Therefore, the ALJ found that Ms. Boucher was not disabled and not entitled to benefits.

## Evidence

**Medical Records.**  After being involved in a motor vehicle accident, on November 20, 2004, Ms. Boucher had a magnetic resonance image ("MRI") and x-rays of her lumbar spine.  The MRI showed a mild compression fracture of the L2 vertebra, a small herniation of the nucleus pulposus at the T12-L1 level, spondylosis of the L4-L5 level and a large herniation of the nucleus pulposus at the L5-S1 level.  The x-ray revealed a minor L2 compression fracture and degenerative disc disease.  Bone density scans taken in November 2004 showed severe osteopenia of the lumbar spine.  A follow up bone density scan in March 2006 showed an 8% reduction from the prior finding.

In March 2005, Ms. Boucher's treating physician, James Peters, M.D., diagnosed her with lumbar spondylosis, degenerative disc disease, L2 compression, and herniated lumbar disc. At that time, Dr. Peters opined that Ms. Boucher could sit for only 20 minutes before needing to walk and could stand for only 10 minutes before needing to sit down.  He also indicated that Ms. Boucher would need to elevate her feet approximately 8 to 12 inches at all times.  Dr. Peters noted that Ms. Boucher's straight leg raising was positive at 60 degrees on the left, and 90 degrees on the right with an inability of forward flexion greater than 30 degrees.

However, at her consultative examination in April 2005, Ms. Boucher's neurological examination was essentially normal with 5/5 strength, no muscle atrophy or rigidity, and normal senses and reflexes.  Her straight leg raising was also normal.  Ms. Boucher walked with a slight limp without an assistive device, but she reported that she used a cane to help ease her pain.  At that time, Ms. Boucher rated her chronic back pain as 3 out of 10 on the pain scale.  The consultative examiner, Mahmoud Yassin Kassab, M.D., opined that Ms. Boucher could not stand or walk 2 hours in an 8 hour day, but indicated that further evaluation by x-rays of the lumbar spine was necessary.  Dr. Kassab noted that Ms. Boucher's diabetes appeared to be well controlled by medication.

In August 2007, Dr. Peters completed a medical source statement opining that Ms. Boucher needed to elevate her feet 75% of the time.  At that time, he also noted that Ms. Boucher was not taking her diuretic medication as prescribed to control her edema.

**Medical Expert Testimony.**  At the hearing, Paul Schneider, M.D., an orthopedic specialist, testified that, based on his review of the record and the most recent objective findings from November 2004, Ms. Boucher would be restricted to sedentary work.  Dr. Schneider further

testified that Ms. Boucher could not perform any kind of climbing and that she would need to be permitted to stand up and move around "for four or five minutes every 30 or 40 minutes." R. at 400.

**Vocational Expert Testimony.** At the hearing, the ALJ asked the vocational expert ("VE") to consider a hypothetical individual who was Ms. Boucher's age and had the same education and work experience and could perform sedentary work with the following additional limitations: she needed to be allowed to alternate between sitting and standing at will for five minutes per hour without leaving her work station; she could only occasionally bend, kneel, stoop, and crawl, and could never squat or climb stairs, ropes, ladders, or scaffolds. The VE testified that such an individual could perform work as a receptionist (with approximately 2,000 positions existing in the regional economy), bookkeeper/auditing clerk (1,500 positions), and general office clerk (1,200 positions). R. at 407.

Ms. Boucher's attorney later asked the VE to assume that the hypothetical individual could not bend and had to "alternate positions every four to five minutes every half an hour." R. at 408. The VE responded that an individual with such limitations would be unable to perform any work because changing positions "at such a frequent level, would interfere with concentration and productivity levels." *Id.*

**Claimant's Testimony.** Ms. Boucher testified at the hearing that she can drive up to 30 minutes, likes to read and play games on the computer, takes care of two dogs, and does simple cooking. Although she can do dishes and laundry, she must sit down while she completes those tasks. Ms. Boucher testified that she can shop for her groceries and personal care items with some assistance and on occasion goes to auctions and rummage sales. R. at 392-394.

According to Ms. Boucher, she is able to lift only 10 pounds, can sit for up to 30 minutes, can stand for up to 20 minutes, and can walk less than a block because of pain in her back and left leg. R. at 388-89. In December 2004, shortly after her motor vehicle accident, Ms. Boucher began to use a cane while walking. Despite her issues with extended sitting, Ms. Boucher did testify that she took a 2 hour car trip (one way) within one year of the hearing, which required her to sit for 4 hours in one day. She testified that "[i]t was a very uncomfortable two hours." R. at 391.

## Discussion

Ms. Boucher's sole argument is that the ALJ erred in determining her RFC. Specifically, Ms. Boucher contends that, although the ALJ stated that he concurred with the opinion of the medical expert, Dr. Schneider, who opined that Ms. Boucher would need to get up and move around for four or five minutes every thirty or forty minutes, the ALJ found that she needed to alternate positions only every hour.

We are not persuaded that the ALJ erred in making his RFC determination. First, the fact that the ALJ stated that he gave "significant weight" to the testimony of Dr. Schneider does not mean that he adopted Dr. Schneider's opinion in its entirety. In fact, the ALJ clearly stated in his opinion that he considered the entire record in evaluating Ms. Boucher's RFC, which included Ms. Boucher's testimony that she had been able to sit for a two hour (one way) car ride within a year of the hearing. Nor was the ALJ required to adopt Dr. Schneider's opinion verbatim. Although an ALJ is entitled to adopt the opinion of a medical source regarding a claimant's RFC, an ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845

(7th Cir. 2007) (citing *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 2006)).  Here, the ALJ weighed Dr. Schneider's opinion along with Ms. Chambliss's testimony and the other record evidence in evaluating her RFC and made a determination that is supported by substantial evidence.

Even if the ALJ had intended to adopt Dr. Schneider's opinion in its entirety, we view the twenty minute difference between Dr. Schneider's and the ALJ's sit/stand restrictions to be inconsequential.  Ms. Boucher argues that the difference is material because the VE testified that there would be no jobs that she could perform if she had the limitations testified to by Dr. Schneider.  However, our review of the record does not support this characterization of the VE's testimony.  The VE did not testify that there would be no jobs that an individual with the sit/stand restriction described by Dr. Schneider coupled with Ms. Boucher's other limitations could perform.  Instead, Ms. Boucher's attorney asked the VE to assume a hypothetical individual who had to "alternate positions *every four to five minutes* every half an hour."  R. at 408 (emphasis added).  In response to that question, the VE testified that a claimant with such a limitation would be unable to perform any work because changing positions "at such a frequent level, would interfere with concentration and productivity levels."  *Id.*  Ms. Boucher's attorney may have intended to ask the VE to comment on an individual with the limitations described by Dr. Schneider, to wit, someone who would need to move around for approximately 5 minutes every 30 to 40 minutes, but that is not what he actually asked the VE.  There is no evidence in the record that Ms. Boucher's other restrictions, coupled with a need to change positions every half hour instead of every hour would eliminate all jobs.  In fact, vocational experts have in many cases identified significant numbers of jobs for claimants with those limitations and courts have upheld ALJ decisions that relied on such expert testimony.  *See, e.g.*, *Reider v. Astrue*, No.

07-C-7271, 2008 WL 2745958 (N.D. Ill. July 11, 2008) (finding significant jobs in the economy that claimant who was limited to unskilled sedentary work and needed to change positions every half hour could perform); *Becvar v. Astrue*, No. 07-C-0136-C, 2007 WL 5595954 (W.D. Wis. Sep. 17, 2007) (holding that significant jobs existed in the economy that claimant restricted to sedentary work with the limitation of alternating between sitting and standing every thirty minutes could perform).

For these reasons, we find that the ALJ's determination of Ms. Boucher's physical limitations and his conclusion that she was capable of full-time, sedentary work with the additional limitations described above, were supported by substantial evidence.  Substantial evidence also supports the ALJ's determination that Ms. Boucher was not disabled because she could perform a significant number of jobs as this finding was based on the opinion of the VE who identified over 4,000 positions in the regional economy that could be performed by someone of Ms. Boucher's age and who had her education and functional limitations. *See Kelley v. Sullivan*, 890 F.2d 961, 965 (7th Cir. 1989) (vocational expert's testimony satisfies Commissioner's burden to produce evidence of a significant number of jobs).

## Conclusion

For the foregoing reasons, we find that the final decision of the Commissioner is supported by substantial evidence and free of legal error, and thus, is <u>AFFIRMED</u>.  Judgment consistent with this Entry shall be issued accordingly.

IT IS SO ORDERED.

Date:  _____10/22/2012_____

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Michael G. Myers

mgmyers10@sbcglobal.net


Thomas E. Kieper

UNITED STATES ATTORNEY'S OFFICE

tom.kieper@usdoj.gov